IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

STEVEN McMILLEN, SR., Register No. 506657, )
                                                               )
                     Plaintiff,               )
                                                               )
                v.                           )         No. 04-4192-CV-C-WAK
                                                              )
DR. LAMOUR,                             )
                                                              )
                     Defendant.           )

## AMENDED ORDER

     Plaintiff Steven McMillen, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343.[1]

     On February 2, 2007, defendant Dr. Lamour filed a motion for summary judgment. On March 5, 2007, plaintiff filed suggestions in opposition and on March 13, 2007, reply suggestions were filed.

     In support of summary judgment, defendant states plaintiff was provided proper medical care for his broken elbow and defendant was not deliberately indifferent to plaintiff's medical needs. Dr. Lamour further alleges he is entitled to judgment based on qualified immunity, and plaintiff's failure to exhaust administrative remedies on these claims.

     In his suggestions in opposition to summary judgment, plaintiff states defendant's failure to follow up on his referral request to the orthopedic specialist, Dr. Kramer, regarding plaintiff's broken elbow, to ensure prompt and definitive treatment for plaintiff, violated his constitutional rights. Plaintiff states his elbow was injured on March 4, 2003, and his medical treatment was unconstitutionally delayed until receiving surgery on April 28, 2003. Plaintiff alleges he exhausted his administrative remedies and that defendant is not entitled to qualified immunity.

---

     [1]Upon consent of the parties, this case was transferred to the United States Magistrate Judge to conduct all further proceedings and to enter judgment, pursuant to the provisions of 28 U.S.C. § 636(c).

## Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Facts

Plaintiff was an inmate at the Jefferson City Correctional Center (JCCC) at all times relevant to this lawsuit. The defendant, Jacques Lamour, M.D., was a licensed physician providing medical services to inmates at JCCC.

On March 4, 2003, plaintiff injured his left elbow, resulting in a fracture. On the same date, plaintiff was examined by Dr. Lamour, who ordered an X-ray of plaintiff's elbow. Dr. Lamour noted plaintiff had a loose body and fracture present in his left elbow, stating the loose body appeared to come from the radial head or lateral epicondyle. Dr. Lamour ordered a sling, application of ice, and a lay-in from work for a period of two weeks. Dr. Lamour also prescribed 800 mg. Motrin for pain. On the same date, Dr. Lamour submitted a request for plaintiff to be

2

referred to the orthopedic specialist, Dr. Kramer, as soon as possible. The medical records indicate Dr. Lamour's request for referral was submitted on March 4, 2003.

The medical records indicate plaintiff was scheduled with Dr. Kramer for the date of March 20, 2003. On March 12, 2003, plaintiff was again seen by Dr. Lamour, upon plaintiff's request. Dr. Lamour examined plaintiff and indicated his elbow was still swollen and painful, that he was unable to extend it, and that he had been in a sling for a week. Dr. Lamour prescribed additional pain medication, and noted that he had discussed the case with Dr. Kramer, who advised he wanted to leave the elbow in a sling for four to six weeks. Dr. Lamour noted he would re-evaluate plaintiff the following week, and if no improvement was seen, would refer him to Dr. Kramer. On March 18, 2003, plaintiff had an appointment with Dr. Lamour, who evaluated plaintiff and referred him to Dr. Kramer for an orthopedic consult.

On March 20, 2003, plaintiff was seen by Dr. Kramer. Dr. Kramer's assessment of plaintiff's elbow was consistent with that of Dr. Lamour, finding a fracture of the radial head with possible loose body. Dr. Kramer ordered a CT scan of plaintiff's left elbow, and a follow-up appointment with Dr. Kramer was scheduled for when the CT results came in.

On April 3, 2003, a CT scan of plaintiff's elbow was taken. On April 4, 2003, plaintiff's X-rays were interpreted by a nondefendant doctor, who confirmed plaintiff to have a fracture of the radial head and lateral epicondyle, with two bone fragments. Also on April 4, 2003, plaintiff filed a Medical Service Request (MSR), alleging he was not receiving medical care for his dislocated elbow.

On April 11, 2003, pursuant to plaintiff's MSR, Dr. Lamour saw plaintiff and noted he had a follow-up appointment with Dr. Kramer soon. On April 17, 2003, plaintiff had an appointment with Dr. Kramer, who reviewed the CT scan and found that the CT scan did reveal a communited fracture of the radial head. Dr. Kramer referred plaintiff to Dr. Tom Turnbaugh for a surgery consult.

On April 25, 2003, plaintiff was seen by Dr. Turnbaugh, who recommended excision to control the pain and to enable range of motion. On April 28, 2003, plaintiff was again seen by Dr. Turnbaugh. On April 29, 2003, Dr. Turnbaugh performed surgery on plaintiff's elbow. Plaintiff was thereafter prescribed Motrin for pain and a two-week lay-in, and was scheduled for a follow-up appointment in two months.

On July 15, 2003, plaintiff's medical records indicate the status of his left elbow to be very good, with his range of motion being excellent, and his being able to pursue full activity without any restriction.

### Discussion

The Eighth Amendment to the United States Constitution forbids the "unnecessary and wanton infliction of pain." "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "Second, a prison official must be, as a subjective state of mind, deliberately indifferent to the prisoner's health or safety." Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995). Therefore, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the

4

delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

**Seriousness of Medical Need**

In the instant case, as to the seriousness of plaintiff's medical need, a broken elbow and the pain associated are clearly serious. However, the seriousness of the broken elbow for purposes of determining whether an alleged delay in receiving medical treatment violated plaintiff's constitutional rights must be considered in light of whether such delay caused plaintiff to suffer a detrimental result. In the instant case, the medical records and plaintiff's deposition testimony clearly provide that plaintiff's pain associated with his broken elbow was promptly and aggressively treated with prescription pain medication, including 800 mg. Motrin, and additional pain medications being prescribed in the weeks leading up to plaintiff's surgery. To the extent plaintiff has some limitation and permanent weakness in his arm resulting from his broken elbow, the orthopedic surgeon who performed the surgery has submitted an affidavit specifically providing that he believes "within a reasonable degree of medical certainty that Mr. McMillen's radial head was never salvageable, even if it had been fixed as an emergency on the day that it occurred." Therefore, plaintiff has come forward with no evidence that a delay in his receiving surgery on his broken elbow violated his constitutional rights.

Moreover, even assuming that plaintiff had an objectively serious medical condition, plaintiff has come forward with no evidence that Dr. Lamour was deliberately indifferent in the treatment of plaintiff's broken elbow. Dr. Lamour promptly provided plaintiff with pain medication, had X-rays taken of plaintiff's elbow, and contacted an orthopedic specialist, to

5

which he referred plaintiff for further treatment. To the extent there was a delay in the referral of plaintiff to the orthopedic specialist, the medical records reflect that such delay was not the result of the actions of Dr. Lamour. The medical records clearly provide that Dr. Lamour immediately referred plaintiff to the orthopedic specialist and followed his directives as to the care of plaintiff's elbow during the interim time before plaintiff's appointment with the specialist.

Plaintiff's medical records clearly show that although he did not receive immediate surgery in response to his broken arm, he did receive active treatment by Dr. Lamour and other nondefendant doctors. The existence of possible alternate courses of treatment, which may or may not have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably, but did not ultimately avert the harm. Dulay v. Carnahan, 132 F.3d 1234, 1241 (8th Cir. 1997). The fact that plaintiff believes he would have had a better result in the healing of his elbow had he had surgery immediately is insufficient to state a claim of deliberate indifference against Dr. Lamour. At most, plaintiff's claims against Dr. Lamour are claims of negligence, which are insufficient to rise to a constitutional violation. Id. at 1239.

## Conclusion

Plaintiff has come forward with no evidence from which a reasonable jury could find that defendant Dr. Lamour was deliberately indifferent to plaintiff's serious medical needs or that any delay in plaintiff's receiving treatment had a detrimental effect in violation of the Eighth Amendment.

In light of the above discussion, defendant Lamour's further grounds for the grant of summary judgment will not be addressed, and defendant's request for oral argument on his motion for summary judgment is denied.

IT IS, THEREFORE, ORDERED that defendant's motion for oral argument is denied. [85] It is further

ORDERED that defendant Lamour's motion for summary judgment is granted and plaintiff's claims are dismissed. [79] It is further

ORDERED that this court's report, recommendation and order of May 9, 2007, is vacated. [86]

6

Dated this 15th day of May, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

7